UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
ALBERT RIZZI,

                                Plaintiff,

        -against-

HILTON DOMESTIC OPERATING
COMPNAY, INC.,

                               Defendant.
----------------------------------------------------------------X

**REPORT AND RECOMMENDATION**
CV 18-1127 (SJF)(ARL)

**LINDSAY, Magistrate Judge:**

       Before the Court on referral from District Judge Feuerstein is Hilton Domestic Operating Company, Inc.'s ("Defendant") motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1). For the reasons set forth below, the undersigned respectfully recommends that Defendant's motion be granted.

## BACKGROUND

       The facts set forth in this report were drawn from the Second Amended Complaint together with "documents incorporated in it by reference," "document[s] upon which the complaint heavily relies." *In re Thelen LLP*, 736 F.3d 213, 219 (2d Cir. 2013) and the affidavits submitted in support of and in opposition to the motion. The facts are taken as true for purposes of deciding the instant motion.

       Plaintiff, Albert Rizzi, is legally blind and uses screen-reading software, a technology that allows people who are visually impaired to access websites. Second Amended Complaint (Second Am. Compl.") ¶¶ 13, 21. Defendant is a hospitality services company that offers hospitality services to individuals across the United States, has offices throughout the United States, operates websites to provide its clients information on various aspects of their hospitality services and allows for the payment of such services online. *Id.* at ¶¶ 14, 17.

Plaintiff claims that from March 2016 to the present, Plaintiff "at numerous times . . . attempted on several occasions to utilize Defendant's website to make reservations and to learn about the services and products available and payment methods for such." *Id.* at ¶ 24. According to Plaintiff, "Defendant's website did not integrate with Plaintiff's screen reader software, nor was there any function within Defendant's website to permit access for visually impaired through other means." *Id.* Plaintiff alleges that he "has several trips planned in the future wherein he wants to use the various [Defendant] websites to make reservations but is prevented from doing so because of the inaccessibility of the various websites." *Id.* at ¶ 20. Plaintiff alleges that "Defendant's website is/was so poorly functional for visually impaired individuals who require screen reader software, that any utilization of the website contains barriers that prevent full and equal use (of the website) by individuals with disabilities who are visually impaired." *Id.* at ¶ 30. The websites at issue in this action are http://www3.hilton.com/en/index.html; http://conradhotels3.hilton.com/en/index.html; http://doubletree3.hilton.com/en/index.html; http://embassysuites3.hilton.com/en/index.html; https://www.hiltongrandvacations.com; and http://www.hiltonworldwide.com/ (the "websites"). *Id.* at ¶ 18.

According to Plaintiff, Defendant's websites contain several types of Programming Error Types ("PETs") "(easily identifiable and correctable), which occur throughout the website such as: 1) The language of the document is not identified, 2) Image alternative text is not present, and 3) A form control does not have a corresponding label." *Id.* at ¶ 66. Additionally, Plaintiff claims that Defendant's websites contain various types of Programing Alert Error Types ("PATs") "(prone to making the website inaccessible), which occur throughout the website, such as: 1) Alternative text is likely insufficient or contains extraneous information, 2) An event handler is present that may not be accessible, 3) A heading level is skipped, 4) Flash content is

present, 5) Adjacent links go to the same URL, 6) A link contains no text, and 7) Alternative text is likely insufficient or contains extraneous information. *Id.* at ¶ 66. "Further, the Defendant's website did/does not include the universal symbol for the disabled, which would permit disabled individuals to access the website's accessibility information and accessibility facts." *Id.* at ¶ 69. Plaintiff, however, does not allege that he personally has ever encountered any of these PATs or PETs, or how they impeded his use of the website. Plaintiff also does not identify which of the six websites at issue in this lawsuit he was referring to when referring to alleged deficiencies or if he encountered difficulties with all of them.

Count I of the Second Amended Complaint alleges a violation of Title III of the American with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12181 et seq. Pursuant to Count I, Plaintiff seeks injunctive relief and attorneys' fees. Count II of the Second Amended Complaint alleges violations of the New York State Human Rights Law comprised of New York State Executive Law §292 et. seq. and New York State Civil Rights Law §40 et. seq. Count III asserts a claim for negligence and Count IV asserts a claim for Intentional Conduct. Plaintiff seeks damages and punitive damages in connection with Counts II-IV.

C. **Procedural History**

Plaintiff commenced this action on February 21, 2018. Plaintiff filed an Amended Complaint on April 4, 2018, and a Second Amended Complaint, which is the subject of this motion, on July 19, 2018.

Defendant moved to dismiss the Second Amended Complaint pursuant to Rule 12(b)(1) on October 12, 2018. Defendant argues that Plaintiff has failed to allege a concrete and particularized injury and that Plaintiff faces no real and immediate threat of future injury and therefore, Plaintiff cannot meet the injury in fact requirement necessary to establish Plaintiff's

3

standing to pursue this claim. *See* Memorandum of Law In Support of Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint ("Def. Mem."), attaching the Declaration of Nicole Bergstrom, dated August 15, 2018 (Ex. A), declaration of Dawn Agliata, dated June 15, 2018 (Ex. B) and Defendant's Request for Judicial Notice In Support of its Motion to Dismiss Second Amended Complaint (Ex. C). Additionally, Defendant argues that in the event this Court finds Plaintiff lacks standing to adjudicate the federal claim it should decline to exercise supplemental jurisdiction over Plaintiff's state law claims. *Id.* Plaintiff has opposed the motion and submits an affidavit providing additional factual support for his claim. *See* Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss the Complaint ("Pl. Mem.") attaching a Consent Decree in *US v. Hilton Worldwide Inc.*, No. 10-1924 (Ex. A) and the Affidavit of Albert Rizzi, dated September 27, 2018 (Ex. B).

By Order dated October 17, 2018, Judge Feuerstein referred the motion to the undersigned for a Report and Recommendation.

## DISCUSSION

### A.   Standard of Review

Defendant has moved to dismiss the complaint under Rule 12(b)(1). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "[T]he court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008)(citations and internal quotation marks omitted), *aff'd*, 561 U.S. 247 (2010). In resolving a motion to dismiss for lack

4

of subject matter jurisdiction, the Court may consider relevant documents that are extrinsic to the complaint. *See id.*

The Second Circuit has noted that "once the Defendants' motion to dismiss for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1) put[s] the Plaintiff[']s[] Article III standing in issue, the District Court has leeway as to the procedure it wishes to follow." *Alliance For Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 87-89 (2d Cir. 2006). The Circuit explained that "[a]fter limited discovery on the jurisdictional issue, the matter might be appropriate for resolution on motion supported by affidavits, or, if a genuine dispute of material fact exists, the Court may conduct a hearing limited to Article III standing." *Id.* (citations omitted); *A.B.-L. v. N. Shore Cent. Sch. Dist.*, No. 17-CV-1586 (JMA)(SIL), 2018 U.S. Dist. LEXIS 14185, 2018 WL 1773496 (E.D.N.Y. Jan. 26, 2018) (proper to consider affidavits in ruling on a motion under Rule 12(b)(1)); *Forbes v. State Univ. of New York at Stony Brook*, 259 F. Supp. 2d 227, 231-32 (E.D.N.Y. 2003) ("In a Rule 12(b)(1) motion, the Court may consider affidavits and other material beyond the pleadings to resolve the jurisdictional question."). Moreover, "[t]he presentation of affidavits on a motion under Rule 12(b)(1), . . . does not convert the motion into a motion for summary judgment under Rule 56." *Id.* at n.7

### B.     Standing Under Title III of the ADA

To establish standing in the context of the ADA, a plaintiff must demonstrate: "1) the plaintiff alleged past injury under the ADA; (2) it was reasonable to infer that the discriminatory treatment would continue; and (3) it was reasonable to infer, based on the past frequency of plaintiff's visits and the proximity of defendants' [property] to plaintiff's home, that plaintiff intended to return to the subject location." *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187 (2d Cir. 2013). As recognized by the court in *Kreisler*, to satisfy the constitutional

requirements of standing, "the injury in fact, . . . must be (a) concrete and particularized, and (b) actual or imminent." *Id.* When a plaintiff seeks injunctive relief, the plaintiff must also demonstrate "a real and immediate—as opposed to a merely conjectural or hypothetical—threat of future injury." *Grella v. Avis Budget Group, Inc.*, No. 14-CV-8273 (CM), 2016 U.S. Dist. LEXIS 19248, 2016 WL 638748, at *4 (S.D.N.Y. Feb. 11, 2016) (quoting *Shaywitz v. Am. Bd. Of Psych. And Neurology*, 675 F.Supp.2d 376, 382 (S.D.N.Y. 2009) (emphasis in original)).

A plaintiff complaining of injuries caused by alleged violations of the ADA "must still establish that such injuries were both concrete and particular to the plaintiff, and must do so with sufficient specificity." *Feltzin v. 183 S. Wellwood Ave Corp.*, No. 16-cv-5387 (ADS)(GRB), 2017 U.S. Dist. LEXIS 181273, 2017 WL 6994213, at *2 (E.D.N.Y. Oct. 25, 2017) (citing *Lujan v. Defenders of Wildlife,* 504 U. S. 555, 560-561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)); *see Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1548, 194 L. Ed. 2d 635 (2016), as revised (May 24, 2016) ("Particularization is necessary to establish injury in fact, but it is not sufficient. An injury in fact must also be 'concrete.'"). "[T]he injury in fact that forms the basis for Plaintiff's standing has two parts: (1) the direct injury from personally encountering disability-based discrimination at Defendant's property, and (2) deterrence from using Defendant's property because it is not ADA compliant." *Access 4 All, Inc. v. Trump Int'l Hotel & Tower Condo.,* 458 F. Supp. 2d 160, 173 (S.D.N.Y. 2006).

Defendant argues that Plaintiff has failed to satisfy the first prong of the test set forth above because Plaintiff has not alleged a concrete and particularized injury and also has not alleged that he faces a real and immediate threat of an injury in fact. Def. Mem. at 1.

1. **Concrete and Particularized Injury in Fact Under the ADA**

According to Defendant, Plaintiff fails to satisfy the first prong of the test for ADA standing because he has failed to allege a concrete and particularized injury. To satisfy the first

6

prong of the ADA standing test articulated in *Kreisler* — a necessity for establishing injury in fact — an allegation of past injuries under the ADA "must still establish that such injuries were both concrete and particular to the plaintiff, and must do so with sufficient specificity." *183 S. Wellwood Ave Corp.*, 2017 U.S. Dist. LEXIS 181273, 2017 WL 6994213, at *2 (citing *Lujan*, 504 U.S. at 560); *Spokeo, Inc.*, 136 S. Ct. at 1548. Plaintiff argues that he alleges direct injuries as set forth in paragraphs 26 and 60 of the Second Amended Complaint and Plaintiff's Affidavit. Pl. Mem. at 12. Paragraph 26 states "Defendant's website did not integrate with Plaintiff's screen reader software, nor was there any function within Defendant's website to permit access for the visually impaired through other means." Paragraph 60 states "Plaintiff Albert Rizzi re-alleges and incorporates by reference the allegations set forth in ¶s 1-58 above." As for Plaintiff's affidavit, the relevant affirmation states:

> The aforementioned reservations for the stays at the Hilton Properties were made by my assistant or others as I could not make the reservations myself. I have been traveling for the past several years to attend these meetings, presentations and various conferences and I have every intention to do so in the future. I have various conferences and conventions that I will be attending in the remaining of months this year and I am currently scheduling arrangements for the upcoming one as well. In addition to having committed to attend the events that required Hilton hotels in the past in the future, I am scheduled to appear at conferences throughout the country in 2019 and I am prevented from going online on the different Hilton websites to make my own reservations. . . . Even though I may stay at Hilton hotels in the future it will be by virtue of others making the reservation for me. That is very discouraging and worrisome for me since I am an independent person that does not want to rely on others despite my vision loss.

Rizzi Aff. ¶ 13.

First, Defendant argues that because "the Hilton Corporate Website and the HGV Website offer no information about specific hotels and do not allow anyone to make hotel reservations or pay for bookings" these websites cannot support Plaintiff's claim that he is precluded from using Defendant's websites to make reservations. Def. Mem at 11-12.

7

According to Defendant "[t]he Hilton Corporate Website contains information for job seekers, investors, and hotel developers." Bergstrom Decl. ¶¶ 8-9. "The HGV Website contains information about timeshare sales." *Id.* at ¶ 9. In his affidavit, as well as in the Second Amended Complaint, Plaintiff's claimed injury is the inability to make reservations and pay for a hotel room. *See* Pl. Mem., Ex. B, ¶¶ 7-13. Defendant argues that since these websites do not allow anyone to make or pay for reservations they may not support Plaintiff's claim. In response to Defendant's position regarding these two websites, Plaintiff argues only that although these websites lack a reservation function, Plaintiff "is obviously put at a disadvantage and cannot engage in protected activity by not having access to these opportunities like everyone else." Pl. Mem. at 5. This assertion in not enough to allege a concrete and particularized injury resulting from Plaintiff's inability to access these sites. As recognized by the court in *Triangle*, "it is not enough for a plaintiff to allege conditions that violate the ADA; he must also allege facts sufficient to establish that he has been injured by those violations." *Feltzin v. Triangle Properties #1, LLC*, No. 14-CV-5131 (JMA) (ARL), 2016 U.S. Dist. LEXIS 192861, at *10 (E.D.N.Y. Dec. 15, 2016). Plaintiff has not averred a single fact relating to his interest in obtaining a job at Defendant or purchasing a timeshare from Defendant. Therefore, the undersigned respectfully recommends the Judge Feuerstein grant Defendant's motion to dismiss Plaintiff's claims to the extent they are based upon the Hilton Corporate Website and the HGV Website because Plaintiff lacks standing to pursue such claims.

Next, Defendant argues that the only paragraph of the Second Amended Complaint that discusses Plaintiff's actual visits to Defendant's websites – paragraph 24 – refers to only one website for which he provides no URL. *See* Second Am. Compl. ¶ 24. Thus, Defendant argues that it does not know which of the six websites Plaintiff actually visited. Plaintiff's affidavit sets forth the dates on which he stayed at Double Tree by Hilton, Hilton, Hilton Garden and Hampton

8

Inn hotels, Rizzi Aff.¶¶ 8-12, coupled with a claim that he was unable to use any of the listed websites to secure those reservations but rather was required to seek the assistance of others to secure the reservations. However, Plaintiff nowhere identifies which of the websites he visited prior to booking his reservations. Moreover, Plaintiff does not allege any visits to an Embassy Suites or a Conrad hotel, despite claiming that these websites are not ADA compliant. Plaintiff offers nothing in response to Defendant's motion to dismiss to further support his claim but simply repeats the conclusory statement that he visited Defendant's 'website" with out identifying which one. Thus, with respect to the remaining four websites, the undersigned respectfully recommends that Plaintiff's claim be dismissed for lack of standing because Plaintiff has not alleged a concrete and particularized injury resulting from the use of a specific website.

Additionally, Defendant argues that Plaintiff has failed to identify any barrier that he actually encountered. The Second Amended Complaint alleges that the Plaintiff could not use the "website" with his screen reader. *Id.* at ¶ 26. Defendants acknowledge that the Second Amended Complaint identifies numerous PET and PAT type errors but argues that Plaintiff fails to "identify any legal standard these PETs and PATs purport to violate, nor does it describe how these items created barriers to access for anyone, let alone Plaintiff." Def. Mem. at 12. "Courts both in this Circuit and elsewhere have held that, as a bare minimum, a plaintiff can establish a direct injury sufficient to support standing only if she 'personally encounters the barrier to access' that caused her injury." *Triangle*, 2016 U.S. Dist. LEXIS 192861 (citing *Gaylor v. Hamilton Crossing CMBS*, 582 F. App'x 576, 579-80 (6th Cir. 2014) (finding that plaintiff established prior injury where he "alleged that he personally observed and encountered an architectural barrier to access in [defendant's] parking lot in the form of excessive slopes, causing him to experience serious difficulty and depriving him of equal access when parking his

9

vehicle and navigating the property"); *Ortiz v. Westchester Med. Ctr. Health Care Corp.*, No. 15-cv-5432, 2016 U.S. Dist. LEXIS 161777, 2016 WL 6901314, at *6 (S.D.N.Y. Nov. 18, 2016) (finding that deaf plaintiffs established injury by alleging specific instances of discriminatory treatment during a visit to defendant medical center); *Green v. Dgg Props. Co.*, No. 11-cv-1989, 2013 U.S. Dist. LEXIS 13138, 2013 WL 395484, at *12 (D. Conn. Jan. 31, 2013) (finding that plaintiff established injury where he detailed numerous personal encounters with inaccessible conditions at a hotel and restaurant, but ultimately dismissing case for lack of standing on other grounds); *Panzica v. Mas-Maz, Inc.*, No. 05-cv-2595, 2007 U.S. Dist. LEXIS 42171, 2007 WL 1732123, at *3 (E.D.N.Y. June 11, 2007) (view of tables from outside of restaurant too speculative and hypothetical to support allegation that tables were not handicapped accessible); cf. *Chapman v. Pier 1 Imps. (U.S.) Inc.*, 631 F.3d 939, 955 (9th Cir. 2011) (plaintiff lacked standing where his complaint left "the federal court to guess which, if any, of the alleged violations deprived him of the same full and equal access that a person who is not wheelchair bound would enjoy")). "In short, a plaintiff who does not allege a personal encounter with conditions in violation of the ADA has failed to allege a direct injury." *Id.*

Plaintiff fails to identify when he visited the website, other than to say between March 2016 and the present, fails to specify which of the websites he visited and fails to identify the "barriers" he encountered and how he was impacted. Plaintiff lists ten programming errors present on the website but there is no explanation in either the Second Amended Complaint or the Rizzi Affidavit explaining how these violations injured Plaintiff. "Plaintiff makes no attempt to tether his laundry list of alleged violations to any alleged injury. Absent such a connection, plaintiff lacks standing." *Triangle*, 2016 U.S. Dist. LEXIS 192861 *see also Feltzin v. Stone Equities, LLC*, CV 16-6457 (SJF) (AKT), 2018 U.S. Dist. LEXIS 22870 (E.D.N.Y. Feb. 8. 2018) ("conspicuously absent from this or any other part of the Complaint are facts explaining how

10

Plaintiff interacted with and experienced violations (a) — (m). Plaintiff's conclusory allegation that "[plaintiff] has personally observed or encountered" these violations, . . . , is insufficient to connect the violations to Plaintiff's experience of them for purposes of establishing a concrete and particularized injury in fact").

Thus "[t]hese conclusory allegations lack any specificity, and without more, preclude a reasonable inference that Plaintiff suffered injury under the ADA at any specifically identifiable time in the past." *Stone Equities,* 2018 U.S. Dist. LEXIS 22870 (citing *Amidax Trading Group v. S.W.I.F.T. SCRL*, 671 F.3d 140, 146 (2d Cir. 2011) ("It is well established that we need not credit a complaint's conclusory statements without reference to its factual context.") (internal quotation marks omitted); *see also Triangle Properties*, 2016 U.S. Dist. LEXIS 192861, at *7 (finding Plaintiff's allegations insufficient even where Plaintiff's Complaint was supported by a sworn affidavit indicating the date on which he allegedly visited the subject premises).

Finally, Defendant's challenge Plaintiff's allegation that the websites at issue fail to contain an Accessibility Notice or any information relating to the website's future accessibility plans. Def. Mem. at 13. Defendant has provided an affidavit from Nicole Bergstrom, Defendant's Director of Digital Accessibility Design, Delivery and Development setting forth the specifics of Defendant's website accessibility policy and stating that at the bottom of the Conrad, Hilton, Embassy Suites and Doubletree websites there is a footer link called "Web Accessibility." Ms. Bergstrom testified that clicking on this link leads to http://hiltonhonors3.hilton.com/en/support/accessibility.html which contains Hilton's website accessibility policy. Def. Mem. Ex. A., ¶ 10. According to Defendant, this page and its contents have been on these websites since September 2013. *Id.* In response, Plaintiff repeats the conclusory allegation that "Plaintiff attempted to locate any Accessible Notice or any information relating to the website's future accessibility plans or information regarding

11

contacting the Defendant to alert the Defendant to the inaccessibility of its websites. But was unable to do so, because no such link or notice was provided." Pl. Mem. at 13. Plaintiff does not identify which website he is referring to, nor does he address the affidavit claiming that all but one of the websites has had an accessibility policy listed since 2013. Much of Plaintiff's argument is addressed to the adequacy of Defendant's policies and practices. However, those policies are not at issue with respect to the instant motion, which is addressed solely to Plaintiff's standing to pursue the claim.[1] It defies logic that a Plaintiff could be injured in 2016 by an alleged failure to include an Accessibility Notice on a website when the undisputed facts indicate that there has been such a notice on five of the six websites listed since 2013.

For the foregoing reasons, the Court finds that Plaintiff has failed to plead facts sufficient to show that he has suffered a concrete and particularized injury in fact under the ADA. In the absence of a concrete and particularized injury in fact, the undersigned respectfully recommends that Plaintiff's Complaint be dismissed for lack of standing. Despite the fact that Plaintiff has already had the opportunity to replead his claims twice, the undersigned nevertheless recommends that Plaintiff be afforded one final opportunity to replead specifically identifying which of the websites Plaintiff visited and precisely the difficulty he encountered with each one.

Notwithstanding this finding, in an effort to evaluate Defendant's full motion, the Court turns to the remaining argument presented by Defendant for dismissing the Complaint.

2. **Real and Immediate Threat of Future Injury**

Defendant argues that Plaintiff's statements that Plaintiff has been to the unidentified "website" on "numerous" or "several occasions" since March 2016, is a "customer" of Hilton, and "continues to desire to patronize [Hilton's] websites" is too vague and conclusory to support

---

[1] Similarly, the parties' discussion of the applicability of Website Content Accessibility Guidelines 2.0 ("WCAG") to the websites in question is not relevant for the purposes of a ruling on Defendant's motion to dismiss for a lack of standing and is more properly relegated to later proceedings, in the event standing is established.

an inference that Plaintiff would use the subject websites in the future. Def. Mem. at 15.

An injury in fact necessary for Article III standing must be "concrete and particularized" (which Plaintiff here as failed to adequately allege) as well as "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560; *see Access 4 All, Inc. v. Trump Int'l Hotel & Tower Condo.*, 458 F. Supp. 2d 160, 173 (S.D.N.Y. 2006) ("[T]he injury in fact that forms the basis for Plaintiff's standing has two parts: (1) the direct injury from personally encountering disability-based discrimination at Defendant's property, and (2) deterrence from using Defendant's property because it is not ADA compliant."). The second component of the injury in fact requirement can be satisfied if a plaintiff can "show a plausible intention or desire to return to the place but for the barriers to access." *Shariff v. Channel Realty of Queens, LLC*, No. 11-CV-1499, 2013 U.S. Dist. LEXIS 144081, 2013 WL 5519978, at *2 (E.D.N.Y. Sept. 30, 2013) (quoting *Small v. General Nutrition Co., Inc.*, 388 F. Supp. 2d 83, 86-87 (E.D.N.Y. 2005)). Importantly, "[i]ntent to return to the place of injury 'some day' is insufficient." *Small*, 388 F. Supp. 2d at 87 (citing *Lujan*, 504 U.S. at 564); *Shariff*, 2013 U.S. Dist. LEXIS 144081, 2013 WL 5519978, at *2 ("[Plaintiffs] must at least prove actual knowledge of the barriers and show that they would visit the building in the imminent future but for those barriers.") (quotations omitted). However, "plausible intention or desire does not require a specific date for plaintiff's return to the . . . website. . . . Plaintiff's statements that he would return to the website in the future to assess whether he could make a reservation" are sufficient to confer standing. *Gonzalez v. Bahar*, No 19-CV-575 (LDH) (RER), 2019 U.S. Dist. LEXIS 58567 (E.D.N.Y. Apr. 3, 2019). In *Bernstein v. City of New York*, 621 F. App'x 56, 58-59 (2d Cir. 2015) the Second Circuit held that:

> Intent to return is a highly fact-sensitive inquiry that incorporates a range of factors including not only the proximity of the defendant's services, programs, or activities to the plaintiff's home and the frequency of the plaintiff's past visits, but also other factors

13

relevant to the calculation of the plaintiff's intent to return such as occupation or demonstrated travel habits.

*Id.* at 59 (citing *Kreisler*, 731 F.3d at 187-88; *Camarillo v. Carrols Corp.*, 518 F.3d 153, 158 (2d Cir. 2008) (per curiam)).

In his affidavit, Plaintiff states that he has future conferences scheduled throughout the country in 2019, including scheduled trips to the Albany, New York, New York, New York, Orlando, Florida and Washington D.C. Rizzi Aff. at ¶ 13. Plaintiff also states he would like access to the "hotel websites" to calculate costs at the hotels but is unable to do so because he cannot access the sites. *Id.* at 14-16. The Court finds these statements fail to establish a "plausible intention or desire" to return to the websites because Plaintiff fails to identify which website he intends to return to. Just as discussed above, Plaintiff's allegation is too conclusory.

Defendant also argues that 'Plaintiff faces no imminent injury from any allegedly inaccessible aspects of the six websites because if he ever did need to research, reserve, and pay for a hotel room at a Conrad, Hilton, Embassy Suites or Doubletree hotel, he can do so by calling each brand's 24/7 fully-staffed customer service telephone lines which are fully described in Section II.A." Def. Mem at 16. In the context of a challenge to standing, this argument has been rejected by *Suvino v. Time Warner Cable, Inc.*, No. 16 CV 7046-LTS-BCM, 2017 U.S. Dist. LEXIS 140963, 2017 WL 3834777 (S.D.N.Y. Aug. 31, 2017), "noting that Title III requires full and equal enjoyment and provides for injunctive relief to compel compliance." *Id.* at *7. The *Suvino* Court noted, however, that "[t]he sufficiency of the auxiliary aids and services provided by [defendants] is a matter for litigation at a later stage of this proceeding." *Id.* at *7. [2] Thus, the

---

[2] Defendant relies upon *Robles v. Dominos Pizza LLC,* No. CV-16-06599-SJO, 2017 U.S. Dist. LEXIS 53133, 2017 WL 1330216, at *8 (C.D. Cal. Mar. 20, 2017) which has been reversed by the Ninth Circuit Court of Appeals. Nevertheless, *Robles* is inapplicable here. First, *Robles* did not involve a challenge to a plaintiff's standing to maintain the lawsuit. Indeed, *Robles* was a unique case and did not involve a request for injunctive relief under the ADA. Most courts that have addressed *Robles* have declined to extend its application to situations where the Plaintiff only seeks injunctive relief broadly requiring compliance with the ADA. *See, e.g., Reed v. 1-800*

14

*Suvino* Court concluded Plaintiff had standing to pursue the ADA claims despite the presence of the 24 hour phone service.

Accordingly, the undersigned respectfully recommends that that the District Court find that Plaintiff has failed to adequately allege a "plausible intention or desire" to return to each of the websites in question because Plaintiff once again failed to allege which website he plans to return to and therefore lacks standing to pursue this broad ADA claim.

### C. State Claims

Finally, Defendant argues that this Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims in the event the ADA claim is dismissed. "[A] federal court should generally decline to exercise supplemental jurisdiction over state law claims, if, as is the case here, the complaint asserts federal question jurisdiction but not diversity jurisdiction and the complaint's federal claims are dismissed in the litigation's 'early stages.'" *Pelt v. City of New York*, No. 11-CV-5633, 2013 U.S. Dist. LEXIS 122848, 2013 WL 4647500, at *19 (E.D.N.Y. Aug. 28, 2013) (internal quotation marks and citations omitted); *see Choe v. Fordham Univ. Sch. of Law*, 81 F.3d 319, 319 (2d Cir. 1996) (holding it is clear a district court holds discretion to "decline supplemental jurisdiction [over state law claims] when all claims over which the district court had original jurisdiction have been properly dismissed"); *see also* 28 U.S.C. § 1367(c)(3). Moreover, while a court possesses the discretion to retain jurisdiction, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state law claims." *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003)

---

*Flowers.com*, 327 F. Supp. 3d 539, 550 (E.D.N.Y. 2018) (citing cases).

15

(internal quotation marks and citation omitted).

In light of the recommended dismissal of all claims over which it has original jurisdiction, the undersigned reports and recommends that the District Court, in its discretion, decline to exercise supplemental jurisdiction over Plaintiff's state law claims.

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Any requests for an extension of time for filing objections must be directed to Judge Feuerstein prior to the expiration of the 14-day period for filing objections. Failure to file objections within this period waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); Fed R. Civ. P 72; *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchant's Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated: Central Islip, New York
       July 18, 2019

_____/s/_____<br>
ARLENE R. LINDSAY<br>
United States Magistrate Judge