```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ALBERT RIZZI,
                                                                    REPORT AND
                                                                    RECOMMENDATION
                                                                    CV 18-1127 (SJF)(ARL)
                                Plaintiff,

        -against-

HILTON DOMESTIC OPERATING
COMPANY, INC.,

                                Defendant.
-------------------------------------------------------------X
```

**LINDSAY, Magistrate Judge:**

Before the Court on referral from District Judge Feuerstein is Hilton Domestic Operating Company, Inc.'s ("Defendant") motion to dismiss Plaintiff Albert Rizzi's Third Amended Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1). For the reasons set forth below, the undersigned respectfully recommends that Defendant's motion be granted.

## BACKGROUND

The Court presumes familiarity with the facts and procedural history of this case and only includes those facts that are necessary for resolution the instant motion. The facts set forth in this report were drawn from the Third Amended Complaint and the affidavits submitted in support of and in opposition to the motion. The facts are taken as true for purposes of deciding the instant motion.

Plaintiff, Albert Rizzi, is legally blind and uses screen-reading software, a technology that allows people who are visually impaired to access websites. Third Amended Complaint (3rd Am. Compl.") ¶¶ 13, 21. Defendant is a hospitality services company that offers hospitality services to individuals across the United States, has offices throughout the United States, operates websites to provide its clients information on various aspects of their hospitality services and allows for the payment of such services online. *Id*. at ¶¶ 14, 15.

In the Third Amended Complaint, Plaintiff repeats his claims that he has been unable to utilize Defendant's websites to make reservations for several hotel stays. Plaintiff claims that from March 2016 to the present, Plaintiff "at numerous times . . . attempted on many occasions to utilize Defendant Hilton's websites . . . to learn about the services and products available and payment methods for such and also make hotel reservations." *Id*. at ¶ 25. In the Third Amended Complaint Plaintiff identifies four websites which he claims he has been unable to access: www.hilton.com/en/ ("Main Website"), www.hilton.com/en/doubletree/ ("DT Site"), www.hilton.com/en/hilton-garden-inn/ ("HGI Site"), and www.hilton.com/en/hampton/ ("H Site").[1] *Id*. at ¶ 18. According to Plaintiff, "Defendant Hilton's websites, specifically, the Main Website, DT Site, HGI Site and H Site, did not integrate with Plaintiff's screen reader software, nor was there any function within Defendant's website to permit access for visually impaired through other means." *Id*. at ¶ 27. Plaintiff alleges that he attempted to visit each of the four listed websites between 8:00 a.m. and 9:00 a.m. daily, between two to four weeks prior to each of his stays but was unable to make a reservation. *See, e.g., id*. at ¶¶ 29, 33, 35. A list of each of Plaintiff's stays is set forth in Paragraph 28. In each instance, Plaintiff alleges "he was unable to access these websites to make a reservation for his trip." *Id*. at ¶¶ 29, 33, 35.[2] Thus, according to the Third Amended Complaint, for each of Plaintiff's more than a dozen hotel stays during the relevant time period he unsuccessfully attempted to make a reservation on each of the four

---

[1] In the Second Amended Complaint the websites at issue were http://www3.hilton.com/en/index.html; http://conradhotels3.hilton.com/en/index.html; http://doubletree3.hilton.com/en/index.html; http://embassysuites3.hilton.com/en/index.html; https://www.hiltongrandvacations.com; and http://www.hiltonworldwide.com/. Only the Main Website was named in both actions.

[2] The Third Amended Complaint also re-alleges allegations from the Second Amended Complaint which this Court recommended dismissing, noting that "[i]t defies logic that a Plaintiff could be injured in 2016 by an alleged failure to include an Accessibility Notice on a website when the undisputed facts indicate that there has been such a notice on five of the six websites listed since 2013."

websites in question.

In the Third Amended Complaint, just as in the Second Amended Complaint, Plaintiff lays out a laundry list of errors on Defendant's websites, claiming the websites contain several types of Programming Error Types ("PETs") (easily identifiable and correctable), which occur throughout the website including the language of the document is not identified, image alternative text is not present, the home page contains unlabeled links, the home page has insufficient heading structure, the search results page contains insufficient color contrast, the search results page contains insufficient heading structure and the form control does not have a corresponding label.  *Id*. at ¶ 76.  Additionally, Plaintiff claims that Defendant's websites contain various types of Programing Alert Error Types ("PATs") (prone to making the website inaccessible), which occur throughout the website, including alternative text is likely insufficient or contains extraneous information, an event handler is present that may not be accessible, a heading level is skipped, flash content is present, adjacent links go to the same URL, a link contains no text, and alternative text is likely insufficient or contains extraneous information.  *Id*. at ¶ 76.  Plaintiff claims that these errors were apparent on each of the four websites, however, he does not specify the nature of the difficulties he encountered on any of the websites in question.  *Id*. at ¶¶ 76, 77.

Count I of the Third Amended Complaint alleges a violation of Title III of the American with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12181 et seq.  Pursuant to Count I, Plaintiff seeks injunctive relief and attorneys' fees.  Count II of the Third Amended Complaint alleges violations of the New York State Human Rights Law comprised of New York State Executive Law §292 et. seq. and New York State Civil Rights Law §40 et. seq.  Count III asserts a claim for negligence and Count IV asserts a claim for Intentional Conduct.  Plaintiff seeks damages

and punitive damages in connection with Counts II-IV.

### C.     Procedural History

Plaintiff commenced this action on February 21, 2018.  Plaintiff filed an Amended Complaint on April 4, 2018, a Second Amended Complaint on July 19, 2018 and a Third Amended Complaint on October 30, 2019.

In October 2018, Defendant moved to dismiss Plaintiff's Second Amended Complaint.  That motion was referred to the undersigned, who recommended dismissal with leave to replead.  Judge Feuerstein adopted the recommendation on September 30, 2019, holding that the Second Amended Complaint "failed to establish a 'plausible intention or desire' to return to the websites because Plaintiff fails to identify which website he intends to return to." *Rizzi v. Hilton Domestic Operating Co.*, No. 18-CV-1127(SJF)(ARL), 2019 U.S. Dist. LEXIS 168724 * 8 (E.D.N.Y. Sept. 30, 2019).  Judge Feuerstein also adopted this Court's finding that Plaintiff's claim should be dismissed because Plaintiff "has not alleged a concrete and particularized injury" and held "that branch of the Report is accepted in its entirety." *Id*.

Defendant once again moved to dismiss the Third Amended Complaint pursuant to Rule 12(b)(1) on February 28, 2020.  Defendant argues that Plaintiff has failed to address the deficiencies that led to the Court's dismissal of the Second Amended Complaint, and therefore the Third Amended Complaint must also be dismissed, this time with prejudice.  *See* Memorandum of Law In Support of Defendant's Motion to Dismiss Plaintiff's Third Amended Complaint ("Def. Mem."), attaching the Declaration of Kathy Walhbin, dated January 16, 2020 ("Walhbin Dec."), and the Declaration of Nicole Bergstrom, dated January 16, 2020 ("Bergstrom Dec.").  Additionally, Defendant argues that Plaintiff's claim is moot and that in the event this Court finds Plaintiff lacks standing to adjudicate the federal claim it should decline to exercise

4

supplemental jurisdiction over Plaintiff's state law claims. *Id*. Plaintiff has opposed the motion and submits an affidavit providing additional factual support for his claim. *See* Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss Plaintiff's Third Amended Complaint ("Pl. Mem.") attaching the Affidavit of Albert Rizzi, dated February 14, 2020 ("Rizzi Aff.").

By Order dated March 2, 2020, Judge Feuerstein referred the motion to the undersigned for a Report and Recommendation.

## DISCUSSION

### A.    Standard of Review

Defendant has moved to dismiss the complaint under Rule 12(b)(1). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "[T]he court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008)(citations and internal quotation marks omitted), *aff'd*, 561 U.S. 247 (2010). In resolving a motion to dismiss for lack of subject matter jurisdiction, the Court may consider relevant documents that are extrinsic to the complaint. *See id.*

The Second Circuit has noted that "once the Defendants' motion to dismiss for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1) put[s] the Plaintiff[']s[] Article III standing in issue, the District Court has leeway as to the procedure it wishes to follow." *Alliance For Envtl. Renewal, Inc. v. Pyramid Crossgates Co*., 436 F.3d 82, 87-89 (2d Cir. 2006). The Circuit

explained that "[a]fter limited discovery on the jurisdictional issue, the matter might be appropriate for resolution on motion supported by affidavits, or, if a genuine dispute of material fact exists, the Court may conduct a hearing limited to Article III standing." *Id*. (citations omitted); *A.B.-L. v. N. Shore Cent. Sch. Dist.*, No. 17-CV-1586 (JMA)(SIL), 2018 U.S. Dist. LEXIS 14185, 2018 WL 1773496 (E.D.N.Y. Jan. 26, 2018) (proper to consider affidavits in ruling on a motion under Rule 12(b)(1)); *Forbes v. State Univ. of New York at Stony Brook*, 259 F. Supp. 2d 227, 231-32 (E.D.N.Y. 2003) ("In a Rule 12(b)(1) motion, the Court may consider affidavits and other material beyond the pleadings to resolve the jurisdictional question."). Moreover, "[t]he presentation of affidavits on a motion under Rule 12(b)(1), . . . does not convert the motion into a motion for summary judgment under Rule 56." *Id*. at n.7

### B. Standing Under Title III of the ADA

To establish standing in the context of the ADA, a plaintiff must demonstrate: "1) the plaintiff alleged past injury under the ADA; (2) it was reasonable to infer that the discriminatory treatment would continue; and (3) it was reasonable to infer, based on the past frequency of plaintiff's visits and the proximity of defendants' [property] to plaintiff's home, that plaintiff intended to return to the subject location." *Kreisler v. Second Ave. Diner Corp*., 731 F.3d 184, 187 (2d Cir. 2013). As recognized by the court in *Kreisler*, to satisfy the constitutional requirements of standing, "the injury in fact, . . . must be (a) concrete and particularized, and (b) actual or imminent." *Id*. When a plaintiff seeks injunctive relief, the plaintiff must also demonstrate "a real and immediate—as opposed to a merely conjectural or hypothetical—threat of future injury." *Grella v. Avis Budget Group, Inc*., No. 14-CV-8273 (CM), 2016 U.S. Dist. LEXIS 19248, 2016 WL 638748, at *4 (S.D.N.Y. Feb. 11, 2016) (quoting *Shaywitz v. Am. Bd. Of Psych. And Neurology*, 675 F.Supp.2d 376, 382 (S.D.N.Y. 2009) (emphasis in original)).

A plaintiff complaining of injuries caused by alleged violations of the ADA "must still establish that such injuries were both concrete and particular to the plaintiff, and must do so with sufficient specificity." *Feltzin v. 183 S. Wellwood Ave Corp.,* No. 16-cv-5387 (ADS)(GRB), 2017 U.S. Dist. LEXIS 181273, 2017 WL 6994213, at *2 (E.D.N.Y. Oct. 25, 2017) (citing *Lujan v. Defenders of Wildlife,* 504 U. S. 555, 560-561, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)); *see Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1548, 194 L. Ed. 2d 635 (2016), as revised (May 24, 2016) ("Particularization is necessary to establish injury in fact, but it is not sufficient.  An injury in fact must also be 'concrete.'").  "[T]he injury in fact that forms the basis for Plaintiff's standing has two parts: (1) the direct injury from personally encountering disability-based discrimination at Defendant's property, and (2) deterrence from using Defendant's property because it is not ADA compliant."  *Access 4 All, Inc. v. Trump Int'l Hotel & Tower Condo.,* 458 F. Supp. 2d 160, 173 (S.D.N.Y. 2006).

Defendant argues that Plaintiff has failed to satisfy the first prong of the test set forth above because Plaintiff has not alleged a concrete and particularized injury.  Def. Mem. at 3.

1. **Concrete and Particularized Injury in Fact Under the ADA**

According to Defendant, Plaintiff fails to satisfy the first prong of the test for ADA standing because he has failed to allege a concrete and particularized injury.  To satisfy the first prong of the ADA standing test articulated in *Kreisler* — a necessity for establishing injury in fact — an allegation of past injuries under the ADA "must still establish that such injuries were both concrete and particular to the plaintiff, and must do so with sufficient specificity." *183 S. Wellwood Ave Corp.*, 2017 U.S. Dist. LEXIS 181273, 2017 WL 6994213, at *2 (citing *Lujan*, 504 U.S. at 560); *Spokeo, Inc.*, 136 S. Ct. at 1548.  Plaintiff argues that he alleges direct injuries as set forth in paragraphs 28 and 75-77 of the Third Amended Complaint and Plaintiff's Affidavit.  Pl. Mem. at 4.  Paragraph 28 lists the dates Plaintiff stayed Double Tree by Hilton,

7

Hilton, Hilton Garden Inn, and Hampton Inn by Hilton hotels and states that states "Plaintiff Albert Rizzi has tried to access the aforementioned websites, specifically to book reservations at Hilton, Double Tree by Hilton, Hilton Garden Inn, and Hampton by Hilton." Paragraphs 75-77 contain a laundry list of PETs and PATs which allegedly rendered the websites unreadable. According to Defendant, these allegations are insufficient because the Third Amended Complaint fails to provide dates on which Plaintiff visited the websites, does not identify any barriers that Plaintiff specifically encountered or explain how each barrier impacted Plaintiff, other than to state in a conclusory fashion that he could not make a reservation. Def. Mem. at 13-15.

In this Court's first report and recommendation, Plaintiff was put on notice that "it is not enough for a plaintiff to allege conditions that violate the ADA; he must also allege facts sufficient to establish that he has been injured by those violations." *Feltzin v. Triangle Properties #1, LLC*, No. 14-CV-5131 (JMA) (ARL), 2016 U.S. Dist. LEXIS 192861, at *10 (E.D.N.Y. Dec. 15, 2016).

Plaintiff's Third Amended Complaint has cured certain of the deficiencies from the Second Amended Complaint. Plaintiff states he visited each of the four websites at issue for each of his stays and has provided an approximate time frame for the visit to the website. 3rd Am. Compl. ¶¶ 29, 33, 35. With respect to the "barriers" he encountered and how he was impacted, Plaintiff states that "the websites . . . are not functional for users who are visually impaired", *id.* at ¶76 and "he was unable to make reservations," *id.* at ¶ 78, and the websites "do not offer an adequate system to permit a disabled person with a visual impairment (who requires screen reader software) to comprehend its website in an effective manner." *Id*. at ¶ 39. As support for these conclusory allegations, Plaintiff lists ten programming errors present on the website but once again there is no explanation of how these violations injured Plaintiff. "Plaintiff makes no

attempt to tether his laundry list of alleged violations to any alleged injury. Absent such a connection, plaintiff lacks standing." *Feltzin v. Triangle Properties #1, LLC*, No. 14-cv-5131 (JMA) (ARL), 2016 U.S. Dist. LEXIS 192861, 2016 WL 11599264, at *5 (E.D.N.Y. Dec. 15, 2016); *see also Harty v. Nyack Motor Hotel Inc.*, No. 19-cv-1322, 2020 U.S. Dist. LEXIS 40429, at *8, 2020 WL 1140783 (S.D.N.Y. March 9, 2020) ("the Complaint still fails, as it does not provide particularized allegations as to how any website at issue fails to meet any accessibility requirements. Plaintiff fails to describe any purportedly deficient features, how they impeded his navigation of the Website, or what, if anything, he was able to observe when he did attempt to access the Website"); *Feltzin v. Stone Equities, LLC*, CV 16-6457 (SJF) (AKT), 2018 U.S. Dist. LEXIS 22870 (E.D.N.Y. Feb. 8. 2018) ("conspicuously absent from this or any other part of the Complaint are facts explaining how Plaintiff interacted with and experienced violations (a) — (m). Plaintiff's conclusory allegation that "[plaintiff] has personally observed or encountered" these violations, . . . , is insufficient to connect the violations to Plaintiff's experience of them for purposes of establishing a concrete and particularized injury in fact").

"A plaintiff who invokes federal jurisdiction by bringing a claim under the ADA bears the burden of establishing standing to assert that claim, including demonstrating an injury in fact." *Yovanny Dominguez v. Grand Lux Café LLC*, 19-cv-10345 (MKV), 2020 U.S. Dist. LEXIS 109679, 2020 WL 3440788 (S.D.N.Y. June 22, 2020). Conclusory allegations of injury, lacking specificity are insufficient to satisfy that burden. *See Amidax Trading Group v. S.W.I.F.T. SCRL*, 671 F.3d 140, 146 (2d Cir. 2011) ("It is well established that we need not credit a complaint's conclusory statements without reference to its factual context"); *Stone Equities,* 2018 U.S. Dist. LEXIS 22870 ("[t]hese conclusory allegations lack any specificity, and without more, preclude a reasonable inference that Plaintiff suffered injury under the ADA at any specifically identifiable time in the past"); *see also Triangle Properties*, 2016 U.S. Dist.

9

LEXIS 192861, at *7 (finding Plaintiff's allegations insufficient even where Plaintiff's Complaint was supported by a sworn affidavit indicating the date on which he allegedly visited the subject premises).

In response to Defendant's motion to dismiss, Plaintiff seeks to bolster his claim by submitting an affidavit describing a test Plaintiff performed on Defendant's websites on January 6, 2020 and describing difficulties he encountered with the websites at that time. Rizzi Aff. at ¶ 9.  However, "[u]nder established standing doctrine, . . ., we evaluate 'whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed.'" *Fed. Defs. of N.Y. v. Fed. Bureau of Prisons*, 954 F.3d 118, 126 (2d Cir. 2020) (quoting *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016).  Thus, Plaintiff is required to specify barriers he encountered prior to filing suit and the "testing" performed by Plaintiff in January 2020 is insufficient to establish standing in 2018.  *See, e.g., Steger v. Franco, Inc.,* 228 F.3d 889, 893 (8th Cir. 2000) (plaintiff's post-complaint visit to facility at issue could not create Article III standing for ADA Title III claim).

For the foregoing reasons, the Court finds that Plaintiff has failed to plead facts sufficient to show that he has suffered a concrete and particularized injury in fact under the ADA.  In the absence of a concrete and particularized injury in fact, the undersigned respectfully recommends that Plaintiff's Complaint be dismissed for lack of standing.  In this Court's earlier recommendation, Plaintiff was advised that he was being afforded one final opportunity to replead specifically identifying which of the websites Plaintiff visited and precisely the difficulty he encountered with each one.  Plaintiff has failed to do so and, accordingly, the undersigned respectfully recommends that this dismissal be with prejudice.

    2. **Plaintiff's Claim Is Moot**

Defendant also argues that because it has submitted evidence from a leading accessibility

10

expert that no barriers to access exist for blind screen readers as of January 16, 2020, Plaintiff's claim is moot. Def. Mem. at 17. "A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91, 133 S. Ct. 721, 184 L. Ed. 2d 553 (2013). "While standing doctrine determines whether a plaintiff has a personal stake in the litigation when the complaint is filed, '[m]ootness doctrine determines what to do if an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during litigation after its initiation.'" *Fed. Defs. of N.Y. v. Fed. Bureau of Prisons*, 954 F.3d 118, 126 (2d Cir. 2020) (quoting *Klein ex rel. Qlik Techs., Inc. v. Qlik Techs., Inc.,* 906 F.3d 215, 221 (2d Cir. 2018) (internal quotation marks and brackets omitted)).

Since Title III of the ADA allows only for injunctive relief, not monetary damages, a claim under the ADA can become moot if a defendant remedies the access barrier during the pendency of the litigation. *Bacon v. Walgreen Co.*, 91 F. Supp. 3d 446, 451 (E.D.N.Y. 2015) (citing *Brief v. Albert Einstein College of Medicine*, 423 Fed. Appx. 88, 90 (2d Cir. 2011)). To establish mootness by remedial action, the defendant must demonstrate that "(1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Clear Channel Outdoor, Inc. v. City of New York*, 594 F.3d 94, 110 (2d Cir. 2010); *see also Fed. Defs. of N.Y. v. Fed. Bureau of Prisons*, 954 F.3d 118, 126 (2d Cir. 2020) ("Defendants, however, 'cannot automatically moot [this] case simply by ending [their] unlawful conduct once sued. . . . Instead, they must show that "it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.") (citations omitted); *Diaz v. Lobel's of N.Y., LLC*, No. 16-CV-6349 (NGG) (SMG), 2019 U.S. Dist. LEXIS 127126, 2019 WL 3429774 (E.D.N.Y. July 30, 2019) ("the party

11

asserting mootness bears a 'heavy burden' in meeting this standard").

Here, Defendant has submitted evidence from an accessibility expert (with expertise in assessing websites for accessibility to people with disabilities and remediating such websites) indicating that no barriers exist on any of the websites for blind screen reader users as of January 16, 2020. According to the Wahlbin Declaration she conducted her review on January 16, 2020 which consisted of going through the steps a typical user would take from the Websites to find a hotel and complete a reservation booking. *Id*. Ms. Wahlbin states in her sworn declaration that she encountered no barriers to completing these steps. *Id*. at ¶ 6. She concludes that, as of the date of her review, blind persons with average proficiency using two of the most popular types of screen reader software, JAWS 2020 and NDVA 2019.2.1, on both Chrome and Firefox browsers are able to search for, find, and complete hotel room reservations on the Websites. *Id*. Absent evidence to the contrary, the Walhbin Declaration demonstrates that "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Clear Channel Outdoor, Inc.*, 594 F.3d at 110.

Defendant must also establish that "it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Fed. Defs. of N.Y.*, 954 F.3d at 126. Defendant argues that as explained in the Second Bergstrom Declaration, "Hilton is continuously expending resources using a team of nine accessibility specialists (including one person who is blind) to carry out a robust and multi-faceted strategy to ensuring the accessibility of the Websites." Second Bergstrom Decl. ¶¶ 4-7. According to Defendant the efforts undertaken to date and expected to continue to ensure this level of accessibility are not a minor undertaking and demonstrate that the alleged misconduct is not likely to occur again.

Plaintiff's response to Defendant's position that his claim has been mooted by remedial actions taken by Defendant is that his arguments on standing are sufficient to defeat Defendant's

argument with respect to mootness, the Rizzi affidavit, dated January 9, 2020, seven days before the Wahlbin Declaration establishes that barriers still exist, and that the Wahlbin Declaration is "self-serving." Pl. Mem. at 7.  First, as discussed above, "[w]hile standing doctrine determines whether a plaintiff has a personal stake in the litigation when the complaint is filed, '[m]ootness doctrine determines what to do if an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during litigation after its initiation.'" *Fed. Defs. of N.Y.*, 954 F.3d at 126.  Thus, Plaintiff's arguments concerning standing have no application to Defendant's position that the action is now moot.  Next, because of the timing, Plaintiff's affidavit describing barriers he encountered on January 9, 2020 does not contradict Defendant's expert's conclusions on January 16, 2020 that people using screen reader software can use Defendant's websites without encountering any barriers.  Finally, Plaintiff offers no support for his accusation that the declaration from an internationally recognized expert, stating that she had personally tested the Websites on January 16, 2020 is self-serving, and the Court finds none. *See, e.g., Diaz v. Kroger*, No. 18 Civ. 7953 (KPF), 2019 U.S. Dist. LEXIS 93177, 2019 WL 2357531, at *7 (S.D.N.Y. June 4, 2019) (rejecting Plaintiff's unsupported argument that an affidavit submitted by an employee of Defendant should be deemed self-serving).[3]

      Because Plaintiff has not come forward with a shred of evidence to suggest that Defendant's remedial actions have not corrected any issues with their websites and has not challenged Defendant's assertion that the condition is not likely to recur, the undersigned respectfully recommends that Defendant's motion to dismiss be granted.  *See Diaz v. Kroger*, 2019 U.S. Dist. LEXIS 93177 (holding that "defendant has met the stringent showing required

---

[3] Plaintiff also argues that "because Defendant now states that there are no issues with its websites does not take away from the fact that Plaintiff suffered emotional distress by not being able to make reservations on his own prior to the commencement of this lawsuit." However, as discussed above, emotional distress damages are not available for Plaintiff's ADA claim.

by the Supreme Court's mootness precedents. The Court accordingly lacks subject matter jurisdiction to consider Plaintiff's claims").

### C. State Claims

Finally, Defendant argues that this Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims in the event the ADA claim is dismissed. In light of the recommended dismissal of all claims over which it has original jurisdiction, the undersigned reports and recommends that the District Court, in its discretion, decline to exercise supplemental jurisdiction over Plaintiff's state law claims.

### OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Any requests for an extension of time for filing objections must be directed to Judge Feuerstein prior to the expiration of the 14-day period for filing objections. Failure to file objections within this period waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); Fed R. Civ. P 72; *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.,* 596 F.3d 84, 92 (2d Cir. 2010); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchant's Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated: Central Islip, New York
August 11, 2020

_____/s/_____
ARLENE R. LINDSAY
United States Magistrate Judge